UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23818-CIV-SEITZ/SIMONTON
<u>CONSENT CASE</u>

FELIX SANTOS, et al.,

    Plaintiffs,

v.

CUBA TROPICAL, INC.,
and JOSE L. RODRIGUEZ

    Defendants.
_____/

### OPINION RE: THE COURT'S ENDORSED ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court upon Defendants' Motion for Partial Summary Judgment (DE ## 70, 71). Plaintiffs have filed a Response (DE # 72), and Defendants have filed a Reply (DE ## 75, 81). The Honorable Patricia A. Seitz has referred this case to the undersigned Magistrate Judge for all further proceedings (DE # 62). On September 23, 2011, the undersigned held the Pretrial Conference, at which Edilberto Marban and Isaac Mamane appeared on behalf of Plaintiffs, and Carmen Rodriguez appeared on behalf of Defendants. The Court ruled on several pretrial matters at the Pretrial Conference and heard argument on Defendants' Motion (DE # 91).[1] Following the Pretrial Conference, the undersigned granted Defendants' Motion by Endorsed Order in advance of a detailed opinion explaining the basis for the ruling, due to the nearness of the trial date, in order to enable the parties to efficiently prepare for trial. The Endorsed Order stated that an opinion detailing the basis for this ruling would be filed separately (DE # 93). This Opinion follows.

---

[1] At the Pretrial Conference, the undersigned also heard argument and ruled on Plaintiffs' Motion in Limine (DE # 85), which was memorialized by the Order on Motions in Limine (DE # 94).

I.      **Plaintiffs' Complaint; Defendants' Answers and Affirmative Defenses**

Plaintiffs Felix Santos, Carlos Garcia and Jose A. Valdes Prieto have filed this one-count action seeking damages for unpaid overtime wages, as well as costs and attorneys' fees, from their former employer, corporate Defendant Cuba Tropical, Inc. ("Cuba Tropical"), and individual Defendant Jose L. Rodriguez, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 ("FLSA") (DE # 17 at 1-2).[2] Plaintiffs contend that they were stock persons for Cuba Tropical, a supermarket supplier. They contend that although they regularly worked over 40 hours per week, they were not paid overtime. As to Defendant Rodriguez, Plaintiffs allege that he "has operational control over the Defendant corporation and is directly involved in decisions affecting employee compensation and hours worked by employees such as Plaintiffs" (DE # 17 at 3). Plaintiffs, accordingly, assert that Defendant Rodriguez is an "employer" under the FLSA, pursuant to 29 U.S.C. § 203(d). Defendants deny this allegation in their Answers and Affirmative Defenses (DE ## 25 at 2; 26 at 2). Defendant Rodriguez further specifies in his affirmative defenses that he does not qualify as an employer under the economic reality test and, therefore, cannot be held liable in this action (DE # 26 at 7-8). Plaintiffs seek to recover against both Defendants, jointly and severally (DE # 17 at 6).

II.     **Defendants' Motion for Partial Summary Judgment**

Defendants have moved for partial summary judgment, seeking to dismiss all claims against Jose L. Rodriguez in his individual capacity (DE # 70 at 1).[3] Defendants claim that, in order for Defendant Rodriguez to be held liable in his individual capacity for the alleged FLSA violations, he must be considered an "employer" under the FLSA provisions. As the crux of their argument, Defendants cite *Patel v. Wargo*, which

---

[2] Upon joint motion, the Court dismissed, without prejudice, the claims of an additional Plaintiff, Juan Alberto Lorenzo (DE # 27).

[3] Plaintiffs had also moved for partial summary judgment but have withdrawn their motion (DE # 80).

2

requires that a person found to be an employer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." 803 F.2d 632, 638 (11th Cir. 1986) (DE # 70 at 3).

Defendants assert that no evidence suggests that Defendant Rodriguez had any control over the corporate Defendant, let alone day-to-day operational control or direct responsibility for employee supervision (DE # 70 at 4). Specifically, Defendant Rodriguez has not been on the premises of Cuba Tropical's facility in four years, so he could not have had a hand in day-to-day operations (DE # 70 at 4). In his deposition, Defendant Rodriguez claims ignorance of any number of management areas of Cuba Tropical, including determining pay rates, the facility's operating hours, who manages the facility, categories of managers, duties of floor workers, insurance held by Cuba Tropical, or even who is running the company (DE # 70 at 4). He disclaims responsibility for day-to-day operations or delegation of authority to managers. Although Defendant Rodriguez is an acknowledged part owner of Cuba Tropical and could step in at any time to exercise greater control over Cuba Tropical, more is required to be considered an employer under *Patel* (DE # 70 at 5). Moreover, other evidence supports Defendant Rodriguez's claims. Specifically, Cuba Tropical's corporate representative, Fausto Alvarez, confirmed managers' control (as opposed to Defendant Rodriguez's) regarding employee hiring and wage-setting, and that Defendant Rodriguez does not visit the facility (DE # 70 at 5). In addition, Plaintiffs have testified that they had never met Defendant Rodriguez although they recognized his name as the man who signed their paychecks (DE ## 70 at 5-6; 72 at 2).[4]

---

[4] The parties disagree as to whether Defendant Rodriguez ever personally signed employees' paychecks, however the only evidence in the record indicates that Defendant Rodriguez only ever signed these Plaintiffs' paychecks by rubber stamp, executed by a Cuba Tropical manager or other officer, whom Rodriguez could not identify.

3

### III. Plaintiffs' Response

In response, Plaintiffs argue that Defendant Rodriguez had ultimate financial and operational control of Plaintiffs' employment and, therefore, is an employer for FLSA purposes. He controls the "purse strings," guides company policies, authorizes FLSA compliance, "solves major problems," and ultimately determines wage levels (DE # 72 at 4-5). In supporting these assertions, Plaintiffs point to Defendant Rodriguez as the only signatory on Cuba Tropical's bank account (the "purse strings" argument), his authorization of the decision to use an employee leasing company (control over "major problems"), his hiring of the initial set of company managers (guidance of company policies), and his signing (or authorizing rubber stamp signing) of employees' paychecks (determination of employee wages). With regard to hiring managers, Plaintiffs rely upon *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999), to argue that this fact is a strong indication of control (DE # 72 at 5). Finally, Plaintiffs assert that their application for employment was through Presidente Supermarket, another company purportedly more directly managed by Defendant Rodriguez (DE # 72 at 6). In support of this last assertion, Plaintiffs attach to their Response copies of Plaintiffs' applications, which appear to be on Presidente Supermarket forms (DE # 72-2).

Plaintiffs offer the following evidence in an effort to controvert Defendants' claims. As Plaintiffs note, Defendant Rodriguez is one of two owners of Cuba Tropical; his sister, the other part owner, lives fulltime in Chicago (DE # 72 at 2). Defendant Rodriguez admits to hiring managers to operate Cuba Tropical when it was initially created, and to continuing communication with Fausto Alvarez. Specifically, he states, in response to a question regarding whether he delegates authority to managers to run Cuba Tropical, "No, I don't – you know, I don't give them orders. I don't tell them what to do. When the first company opened, you know, they'd – people were hired to work at the company and that's about it." Then, in response to whether he ensures the company is

4

running smoothly, he responds, "Usually [the managers] – you know, they – someone comes to me and tells me, you know, everything, you know, is doing well. I mean, we have a manager that – you know, the books, we check the books, everything is fine. You know that is about it." (Both quotes from DE # 71-1 at 4). Relatedly, Plaintiffs cite Defendant Rodriguez's deposition testimony to support the contention that Defendant Rodriguez authorized other managers to run the day-to-day operations of Cuba Tropical, including the details of employee hiring and compensation. Finally, Plaintiffs note that Defendant Rodriguez is the only apparent signatory on Cuba Tropical's bank account, had ultimate control over a decision to use an employee leasing company (that Cuba Tropical used for a limited time), and held Plaintiffs' employment applications at Presidente Supermarket, which Defendant Rodriguez actively manages on a day-to-day basis (DE # 72 at 2-3).

####  IV. Defendants' Reply

In their Reply, Defendants point out that Plaintiffs fail to address the rule for employer liability stated in *Patel*, which was later reiterated in *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008); specifically, that an "employer" must be involved in "day-to-day operation or have some direct responsibility for the supervision of the employee." Defendants deflect Plaintiffs' argument regarding Defendant Rodriguez's ultimate control by pointing to the rule of *Alvarez Perez* that "unexercised authority is insufficient to establish liability as an employer." *Id.* at 1161. (DE # 75 at 1-2). *Alvarez Perez*, they continue, focuses not on the role a defendant could have played, had he exercised his authority, but on the actual role of the individual in relation to operational control (DE # 75 at 2).

Defendants continue by discrediting Plaintiffs' reliance on cases decided by other Circuit Courts of Appeals when there is controlling precedent in the Eleventh Circuit. Based on the controlling rule, looking to a person's authority, without considering their

5

exercise of such authority in relation to operational control, misses the mark. In addition, Defendants suggest that relying on a test for employer liability that simply looks to whether a person had authority to sign checks would subject a wide range of heads of companies and other officers to FLSA liability who were not intended to be held liable under the law (DE # 75 at 2). Furthermore, in regard to check signing, while Plaintiffs dispute whether Defendant Rodriguez at some point signed checks personally, the only record evidence consists of copies of checks signed with a rubber stamp, and Defendant Rodriguez's testimony that he did not recall in the last eight years whether he ever personally signed checks (DE # 75 at 2-3). With regard to authority delegated to managers, aside from the deposition testimony quoted above regarding Defendant Rodriguez's role, Plaintiffs fail to provide any evidence of greater involvement or control, and Defendant Rodriguez has testified to almost total ignorance as to Cuba Tropical's management and exceedingly minimal contact with its managers (DE # 75 at 3). As to Plaintiffs' citing of the employee leasing company (as an example of Defendant Rodriguez's involvement in major operational issues), Defendants point out that company accountant, Fausto Alvarez, testified that he "told" Defendant Rodriguez of Mr. Alvarez's decision to use the leasing company (DE # 75 at 4). Finally, Defendants address the job applications filled out on forms of another company. On this point, Defendants cite Plaintiff Santos' own testimony that he was hired without filling out any paperwork, on site at the Cuba Tropical facility, by a Cuba Tropical manager. Furthermore, the other two Plaintiffs obtained their jobs through connection with Plaintiff Santos, and no record evidence, other than applications on another company's forms, suggest any alternate connection with Defendant Rodriguez, whatever it might be (DE # 75 at 4-5). In sum, Defendants conclude that Defendant Rodriguez's unexercised authority to control the business does not amount to employer liability pursuant to the FLSA under applicable Eleventh Circuit precedent (DE # 75 at 6).

## V. Statement of Undisputed Material Facts

The undisputed material facts, viewed in the light most favorable to Plaintiffs, are as follows:

1. On December 6, 2010, Plaintiffs filed their Second Amended Complaint against Defendants alleging violations of the FLSA (DE # 17).

2. Plaintiffs allege that Defendant Jose Rodriguez is an "employer" as defined by the FLSA (DE # 17 at 3).

3. Defendant Rodriguez is a 50% owner of Defendant Cuba Tropical and is an unspecified officer of the company (DE ## 71-1 at 4; 49-4 at 4). His sister, Leticia Rodriguez, owns the other 50%, is also an unspecified officer, and lives full-time in Chicago (DE ## 49-4 at 4; 71-1 at 3, 4, 5, 11). The company has been in existence since 2003 (DE # 71-1 at 3, 5).

4. Mr. Rodriguez has not met and does not know Plaintiffs (DE # 71-1 at 10); none of the Plaintiffs has ever seen or met him (DE ## 71-2 at 9; 71-3 at 9; 71-4 at 5).

5. Defendant Rodriguez had not been to Cuba Tropical's facility for four years, from approximately March 2007 to the date of his deposition in March 2011 (DE # 71-1 at 4). Mr. Rodriguez does not know who the managers are for Cuba Tropical (DE # 71-1 at 5). His sister, the other part-owner, does not participate in managing the business (DE # 71-1 at 3, 5, 11). When the company was first started, managers were hired to manage all business operations (DE # 71-1 at 4). At that time, Fausto Alvarez, who is the only other officer of Cuba Tropical (an assistant secretary), was hired as the company's accountant and continues in that role (DE ## 49-4 at 4; 69-1 at 3, 4; 71-1 at 5).

6. Mr. Rodriguez had authorized Mr. Alvarez to authorize managers to determine appropriate staffing, employee wages and hours. These managers also make employee hiring and termination decisions (DE 69-1 at 7). Mr. Alvarez determined that using an employee leasing company, Advantec, would be economically beneficial for Cuba

7

Tropical (which it used for a brief period).  Mr. Alvarez made the decision, told Mr. Rodriguez of his decision, and Mr. Rodriguez approved it (DE # 69-1 at 8).  Mr. Alvarez also reviews the financial records of Cuba Tropical and reports to Mr. Rodriguez periodically on the general health of the company (DE ## 71-1 at 4, 5, 8; 69-1 at 4).

7.  Mr. Rodriguez authorized the use of a rubber stamp of his signature to sign company checks, for paychecks as well as other payments.  He authorized use of the stamp for his convenience, since he was not on site (DE ## 71-1 at 5-6; 69-1 at 7).  Mr. Alvarez and Mr. Rodriguez believe that Mr. Rodriguez is the only signatory on Cuba Tropical's bank account (DE ## 71-1 at 5; 69-1 at 7).

8.  Adelfo Corrales, a Cuba Tropical manager, hired Felix Santos at Cuba Tropical's place of business without any interview process (DE ## 71-2 at 4; 69-1 at 4-5).  Paperwork for his application was filled out for him, during his first day of work, on forms of Presidente Supermarket, a company with which Mr. Rodriguez is involved in day-to-day operations (DE ## 71-2 at 4; 72-2 at 1-2; 71-1 at 7).  Santos has signed one of these forms (DE # 72-2 at 1).  Santos began working for Cuba Tropical in March 2006 (DE # 71-2 at 4).

9.  Plaintiff Carlos Garcia was hired through Felix Santos, with the approval of Diango, another Cuba Tropical manager (DE ## 71-3 at 4; 69-1 at 5).  Felix Santos told Garcia that he was hired.  Carlos Garcia's written application is on a Presidente Supermarket form, which has his signature (DE # 72-2 at 3).  Plaintiff Garcia started working for Cuba Tropical in the beginning of September 2009 (DE # 71-3 at 4).

10.  Plaintiff Jose A. Valdes Prieto was hired by Rene Acosta, another Cuba Tropical manager (DE ## 71-4 at 3; 69-1 at 5).  His written application is on a Presidente Supermarket form, which has his signature (DE # 72-2 at 4-5).  He began working for Cuba Tropical on August 4, 2008 (DE # 71-4 at 3).

11. Plaintiffs Santos, Garcia and Valdes Prieto were terminated by Fausto Alvarez (DE ## 71-2 at 4; 71-3 at 4; 71-4 at 4). Plaintiffs Santos and Garcia were fired on August 3, 2010.

VI. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, all reasonable doubts about the facts should be resolved in favor of the non-movant. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982) (citations omitted). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Id.* Thus, summary judgment may be inappropriate even where the parties agree on the basic facts but disagree about the inferences that should be drawn from these facts. *ProfiTel Group, LLC v. PolyOne Corp.*, 238 Fed.Appx. 444 (11th Cir. 2007) (*citing Clemons*, 684 F.2d at 1368). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Id.* However, the mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Id.* (*citing Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (quotation omitted)).

Where the moving party bears the burden of proof, it is incumbent upon the moving party to produce evidence to establish its claim. However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e)

9

requires the nonmoving party to go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324 (citation omitted). The moving party is required only to point to the absence of evidence in the record as to that issue.

VII. <u>Standard for FLSA "Employer" Status and Analysis</u>

To be liable under the FLSA for violating overtime wage provisions, an individual must be an "employer" as defined by the FLSA. 29 U.S.C.A. § 207(a)(1) (West 2011). The FLSA includes in the definition of this term "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203 (West 2011).

A. <u>The Disjunctive Rule</u>

*Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), and its progeny analyze this provision with respect to defendants in their individual capacities. In *Patel,* the Court held, "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." 803 F.2d at 638. In *Patel*, individual defendant Dr. Alex Wargo was a principal shareholder, officer and medical director of the defendant facility-employer, a drug and alcohol rehabilitation center, which Dr. Wargo established with another individual. Dr. Wargo later became the acting executive director, at which time he directed the firing of plaintiff Patel. *Id.* at 633-34. Dr. Wargo, however, was found to have not been involved in the day-to-day operation of the facility or to have had direct responsibility with respect to Patel. Thus, the Court held he was not an employer. In reaching this result, the Court noted that while Dr. Wargo could have "played a greater role" in the operation of the defendant facility-employer, he had not. *Patel*, 803 F.2d at 638.

The Eleventh Circuit Court of Appeals reaffirmed this disjunctive rule in *Alvarez Perez,* 515 F.3d 1150 (11th Cir. 2008). In *Alvarez Perez,* the district court granted an individual defendant's motion for judgment as a matter of law because, although he

10

owned the company, he did not exercise the control over employees that the FLSA requires. *Alvarez Perez*, 515 F.3d at 1155. The individual, Jack Collins, Sr., was officially the managing agent of the facility. Nonetheless, the Court continued:

> Despite his official position and being known as "the head boss," Collins, Sr.'s sons had actually run the business for him since he suffered a heart attack…. Jack Collins, Jr., rather than his father, had ultimate authority over hiring and firing decisions. In fact, Collins, Sr. had visited the facility only once a year since his heart attack. He had not taken part in the day-to-day operations of the facility since [his heart attack], nor had he been involved in the hiring and firing of employees, employee assignments, determining employee compensation, or supervising employees.

*Id.* at 1154. The Court affirmed the district court's ruling and reiterated its holding from *Patel*. Specifically, it quoted *Patel*, noting that, while "the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally," the Court has also "made clear that in order to qualify as an employer for this purpose, an officer 'must either be involved in the day-to-day operation or have some direct responsibility for supervision of the employee.'" (Id. at 1160) (citing *Patel*, 803 F.2d at 637-38). The Court described Jack Collins, Sr.'s role as shown by the evidence: he did not take an active role in day-to-day operations, his son had ultimate say in hiring and firing of employees, as well as their supervision and compensation and, while other managers would have followed Jack Collins, Sr.'s orders, he never provided any. In light of this relationship, the Court concluded that "unexercised authority is insufficient to establish liability." *Id.* at 1161.

In the case at bar, Defendant Rodriguez's testimony evidences little connection with the operation of the business he owns with his sister, who is even less active in the operation. Plaintiffs offer scant evidence to refute Defendant Rodriguez's claims. Plaintiffs are only able to establish that Rodriguez

11

is a part owner, that he initially hired managers of the business to whom he delegated responsibility for managing the affairs of the business, including employment matters, that he is the only signatory on Cuba Tropical's bank account, that he authorized the use of a rubber stamp of his signature to sign checks, and that he has the authority to control the business by virtue of his ownership. Additionally, Plaintiffs attempt to controvert other points of fact. For instance, while Mr. Alvarez testifies that he "told" Defendant Rodriguez of the decision to use an employee leasing company, he also responded affirmatively when asked whether Defendant Rodriguez "authorize[d]" the change (DE # 69-1 at 8). With regard to check signing, Plaintiffs assert that Rodriguez personally signed checks at some point, but the only record evidence is that checks were signed through the use of a rubber stamp of the signature of Rodriguez, by someone working for Cuba Tropical with delegated authority.

Plaintiffs argue that Defendant Rodriguez was consulted on some matters of operational significance. This claim rests on deposition testimony of Rodriguez that he has occasional conversations with Fausto Alvarez. Even this claim, however, fails, as Rodriguez clearly states that he did not give anyone orders or tell anyone what to do, and no evidence suggests any relationship to the contrary, including testimony of other managers and Plaintiffs, themselves. Moreover, no evidence suggests consultation as to supervision of employees, aside from an attenuated claim that Rodriguez weighed in on the decision to use an employee leasing company, discussed below.

The disjunctive test of *Alvarez Perez* requires either that Rodriguez be involved in day-to-day operations, or that he "have some direct responsibility for supervision of the employee," in order to be considered an employer under the FLSA. *Alvarez Perez,* 515 F.3d at 1160. Plaintiffs fail to make any argument that

Defendant Rodriguez had any control of day-to-day operations, nor does the record support such an assertion.  As to the second part of this disjunctive test, under the facts before the Court, Defendant Rodriguez did not have direct responsibility for supervision of any employee under the FLSA.  While he may have ultimate authority as part owner, it remains unexercised, which is insufficient for FLSA purposes.  His authority as to employee hiring, schedule setting, wage setting, and termination has been delegated to managers who he was unable at deposition to identify.  While he "signed" checks by stamp and was the sole signatory on Cuba Tropical's bank account, this is insufficient to establish employer liability under this test of *Patel* and *Alvarez Perez*.

More recently, the Eleventh Circuit has reaffirmed that "status as a corporate officer alone is insufficient to render an individual an 'employer' to hold the officer personally liable for unpaid wages."  *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839 (11th Cir. 2009).  In *Olivas*, after restating the disjunctive test, the Court cited *Alvarez Perez* and *Patel* as instances when it had inquired as to "whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters 'in relation to an employee'" when determining the personal liability of an "employer."  *Id.* at 845 (citing *Alvarez Perez*, 515 F.3d at 1161).  Even focusing on this line of inquiry, the analysis of Mr. Rodriguez's status does not lead to a different conclusion.  Defendant Rodriguez could only be considered "involved" in any of these highlighted matters by virtue of his indirect delegation of authority to others to handle them.  As the facts of *Alvarez Perez* described above make clear, such level of involvement is not sufficient to trigger employer status.  In *Patel*, the individual defendant was a corporate officer and had directed the firing of the plaintiff.  *Patel*, 803 F.2d at 634.  Nonetheless, the Court held that he was not an

13

employer. Given the level of involvement required under this line of inquiry, and the facts of Mr. Rodriguez's involvement in Plaintiffs' employment, Mr. Rodriguez cannot be considered an employer under *Olivas*.

### B.     An Alternative Test

Plaintiffs conceded at the Pretrial Conference that, if the disjunctive rule of *Patel* and its progeny is the controlling rule in this jurisdiction, then Defendant Rodriguez is, indeed, entitled to summary judgment. Plaintiffs, however, argue that *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984), cited by the *Alvarez Perez* Court, serves as an alternative test for employer status under the FLSA in this jurisdiction. In citing *Grim Hotel*, the *Alvarez Perez* Court notes parenthetically that the defendant in that case was held to be an employer where "he began and controlled the hotel corporations, held their purse strings, guided their policies, could authorize compliance with the FLSA, solved major problems, and had 'ultimate control over wages.'" *Alvarez Perez*, 515 F.3d at 1161 (citing *Grim Hotel*, 747 F.2d at 972). The *Alvarez Perez* Court cites *Grim Hotel* as part of a discussion of a U.S. Sixth Circuit Court of Appeals case, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991), which plaintiff's counsel had cited as supportive of his claims, but which the Court found unhelpful. The Court in *Alvarez Perez* does not explicitly declare the role, if any, of *Grim Hotel* (or the relative weight of its elements) as a test for employer status in this jurisdiction. Plaintiffs' counsel argues that it serves an alternative test for determining whether a defendant is an employer for FLSA purposes.

Even if *Grim Hotel* serves as an alternative test for determining employer status, the undersigned finds that Defendant Rodriguez is not an employer for FLSA purposes under this test. First, Defendant Rodriguez, admittedly, is a part owner of Cuba Tropical and maintains contact with Fausto Alvarez. The

14

uncontroverted record evidence, however, as detailed above, demonstrates that other managers controlled the corporation. Mr. Rodriguez has testified that he had no knowledge on any number of management issues because he has delegated control of Cuba Tropical to other managers. While he "began" the corporation, no evidence suggests that he has control, apart from his ownership.

As for who held Cuba Tropical's "purse strings," the record evidence is that Defendant Rodriguez's hold was tenuous, at best; the evidence reveals that managers made decisions as to pay rates and hours worked, and, additionally, the amount of money to be paid to employees, by exercising the authority delegated to one or more managers to stamp the signature of Defendant Rodriguez on paychecks. While Defendant Rodriguez may be the only signatory on Cuba Tropical's bank account, and could have exercised ultimate control of payments, the evidence in the record does not demonstrate that Defendant Rodriguez exercised this control. No evidence suggests that Rodriguez had any knowledge beyond a general understanding of the health of the company (DE # 71-1 at 4). While he may hold the "purse strings," the purse is open, with other managers or officers reaching in at will, through use of the signature stamp, to make payments on behalf of Cuba Tropical.

As evidence of Defendant Rodriguez guiding company policy, Plaintiffs cite his initial hiring of managers to run the company at its inception (DE # 72 at 5). Rodriguez, however, has testified that the company is about eight years old, and he does not know the identities of the current managers (DE # 71-1 at 5). *Cf. Grim Hotel*, 747 F.2d at 972 (stating that defendant personally selected the manager of every hotel). This hardly speaks to Defendant Rodriguez guiding company policy as contemplated by this test. Moreover, a review of the record reveals scant

evidence as to any other policies that Defendant Rodriguez guided, let alone had any knowledge thereof.

With regard to who could authorize compliance with the FLSA, the parties have offered little treatment of this element, and the record reveals little evidence as well. Presumably, Defendant Rodriguez could have ultimately authorized compliance with the FLSA as a part owner of Cuba Tropical, but this assumption has not been established. Moreover, Plaintiffs have failed to cite any evidence that suggests that "[i]t was only he who could authorize compliance with the [FLSA]." *Grim Hotel*, 747 F.2d at 972. Instead, the record provides evidence of other managers controlling working hours, wages, and payments to employees, as well as any policies relating thereto.

To support Plaintiffs' claim that Defendant Rodriguez "solved major problems," Plaintiffs assert that Defendant Rodriguez was the person who decided to use Advantec, an employee leasing company (DE # 72 at 5). The uncontroverted testimony of Cuba Tropical accountant, Fausto Alvarez, however, is that he made the decision. When asked, "Who made the decision to use an employee leasing company?", he stated, "I did." Mr. Alvarez later responded, when asked if he consulted with Mr. Rodriguez on the decision, "I told him I was changing it." Only then, in response to being asked the leading question, "And did Mr. Rodriguez authorize you to make that change?" after the exchange above, did Mr. Alvarez answer, "Yes." Counsel's follow-up effort to characterize the exchange as Defendant Rodriguez's authorization of the change belies Mr. Alvarez's own words that he made the decision and, then, "told" Mr. Rodriguez about the decision he had made (DE # 69-1 at 8). Moreover, Plaintiffs have provided no other evidence of a "major problem" that Defendant Rodriguez solved.

Plaintiffs assert that Defendant Rodriguez had "ultimate control over wages," but the Plaintiffs do not appear to cite any evidence apart from that already cited and discussed above in reference to control of payments or control of the corporation, generally. Accordingly, for the reasons stated above, Plaintiffs' claim fails. The uncontroverted evidence is that Defendant had delegated control over wage-setting and payment thereof to managers.

*Grim Hotel* emphasizes the importance of the "economic realities" in determining a defendant's status as an employer, *Grim Hotel*, 747 F.2d at 972. The economic realities of this case, based upon the evidence before the Court, reveal that Defendant Rodriguez was not in control of Plaintiffs' employment and, thus, cannot be found to be employer under this test.

In *Olivas*, the Court also refers to an "economic reality test" set forth in *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 539 (1985). 324 Fed. Appx. at 846 n.6. The test includes the following elements: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Olivas*, 324 Fed. Appx. at 846 n.6 (citing *Bonnette*, 704 F.2d at 1470). The Court in *Olivas*, however, declined to decide whether that test applies to the determination of individual liability, stating: "It is unclear whether the *Bonnette* test applies in the context of determining whether a corporate officer is an 'employer,' as normally it is applied in cases concerning whether an entity is an employer." It was unnecessary to decide the issue in *Olivas* because the result would be the same.

**Analogously, in the case at bar, even if this version of an economic realities test were applied to the facts of this case, Defendant Rodriguez is not an employer for FLSA purposes. The undersigned notes that no single factor is dispositive. "Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive. Since economic reality is determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (emphasis in original) (cited by *Olivas* as an example of the *Bonnette* factors being applied to an individual defendant). Nonetheless, the Court first reviews the facts as applied to each factor. The undersigned notes that the record evidence detailed above has established that Mr. Rodriguez did not supervise and control employee work schedules or conditions of employment (factor #2), or determine the rate and method of payment (factor #3), beyond Mr. Rodriguez's authorization of use of a rubber stamp signature. The other two factors, though less clear-cut, still weigh against finding Mr. Rodriguez as an employer. As for Mr. Rodriguez's power to hire and fire employees (factor #1), this was an ultimate, unexercised power that Mr. Rodriguez may have possessed by virtue of his ownership, but he did not hire any employees beyond certain managers at the company's inception. Nonetheless, Mr. Rodriguez was unable to identify any current managers of Cuba Tropical. With regard to maintenance of employment records, the undisputed facts indicate no employment records maintained by Mr. Rodriguez. At most, certain application materials of Plaintiffs were filled out on forms of Presidente Supermarket, which Mr. Rodriguez was involved in managing, although Mr. Rodriguez testified that he was not involved in hiring or firing employees at Presidente Supermarket (DE # 71-1 at 7). In sum, upon a review of the "totality of**

circumstances," Mr. Rodriguez was not an "employer" under the FLSA, as analyzed against this economic realities test. Mr. Rodriguez simply did not exercise sufficient control over the business or the Plaintiffs.

### VIII. Conclusion

Plaintiffs have failed to present sufficient evidence to support a finding that Defendant Rodriguez meets the test for FLSA "employer" status under the disjunctive test established by *Patel* and its progeny, as well as under alternative economic realities tests cited by the Eleventh Circuit; and, the undisputed material facts establish that Rodriguez is not an employer. Therefore, Defendants' Motion for Partial Summary Judgment has been granted, as ruled in the Endorsed Order (DE # 93) previously entered.

**DONE AND ORDERED** at Miami, Florida, this 4th day of November, 2011.

*/s/ Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All counsel of record via CM/ECF